******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# MALKIE WIEDERMAN *v.* ISAAC HALPERT ET AL.
## (AC 39274)

DiPentima, C. J., and Sheldon and Mihalakos, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, H and M, for breach of fiduciary duty, fraud, conversion, and violations of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.), arising out of a real estate investment agreement. The agreement created several limited liability companies that purchased properties for development and, although the plaintiff was supposed to receive a percent of the profits, she alleged that the defendants commingled accounts, misappropriated and withheld funds, converted the funds for their own personal use, and secured the funds by use of fraudulent documents. The court entered a default as to H and M when, on the date of a scheduled trial management conference, only the plaintiff and her counsel appeared. Thereafter, following a hearing in damages at which H failed to appear despite having been subpoenaed to testify, the trial court rendered judgment in favor of the plaintiff and awarded her compensatory damages, punitive damages in the amount of $175,000, and attorney's fees and costs. After the trial court denied the motion to open the judgment filed by H and M, they appealed to this court raising claims of error that were not raised in their motion to open. They claimed that the judgment should be opened because their claims of error implicated the trial court's subject matter jurisdiction or because the court's actions constituted plain error that resulted in manifest injustice. *Held*:

1. H and M could not prevail on their claim that the trial court lacked subject matter jurisdiction, which was based on their claim that the plaintiff did not have standing to assert her claims because the injuries that she allegedly sustained were derivative of injuries to the limited liability companies; the plaintiff established a colorable claim of direct injury and, thus, that she was aggrieved by the defendants' conduct, as the complaint did not allege that she had standing solely by reason of being a member of the limited liability company but, rather, alleged that H conducted the day-to-day management of the companies in a manner that damaged her personally and directly in that she never received any portion of the profits or distributions from the properties, and her allegations that H and M had misappropriated, wasted, and mismanaged the funds that were due to her, and that they forged her signature on certain financial documents, claimed injuries that were not remote, indirect or derivative, but were peculiar to her.

2. H and M's claim the trial court committed plain error by failing to make explicit determinations as to the legal sufficiency of the plaintiff's claims, and by assuming that the entry of default against them had conclusively established their liability was unavailing; the trial court specifically found that the plaintiff proved damages on her counts of breach of fiduciary duty, conversion, fraud and bad faith, but that she failed to meet her burden of establishing a violation of CUTPA, which demonstrated that the court considered the sufficiency of the plaintiff's pleading and proof in determining whether to award her damages, and although the trial court did not explicitly address the legal sufficiency of each of the plaintiff's claims, it necessarily found them sufficient when it awarded damages on those claims.

3. The trial court did not commit plain error in finding M liable to the plaintiff for fraud, the plaintiff having properly set forth a claim of fraud against both H and M in her complaint; the plaintiff alleged that she was induced by representatives of H and M to invest in the companies, that she relied on the representations of both H and M as to the organization, structure, and day-to-day management of the investment endeavor, and that both H and M deposited rent checks, to which she was entitled to 50 percent, into their personal bank accounts, used the companies' accounts for personal matters, were involved in forging the plaintiff's name on financial documents, and refused to account for the funds to which she claimed she was entitled.

4. The trial court improperly found M liable to the plaintiff for conversion, as the plaintiff's complaint did not sufficiently allege a claim of conversion against M; the conversion count of the complaint clearly and unequivocally applied only to H, both by its title and by the allegations set forth therein, which described only H's conduct.

5. This court could not conclude that the trial court committed a patent, readily discernible or obvious error in its award of compensatory damages as to the plaintiff's claims for breach of fiduciary duty, fraud, conversion, and bad faith, as the plaintiff's testimony and exhibits provided abundant support for the award of damages, and H and M did not ask the court to explicitly identify the damages awarded on each of the plaintiff's claims.

6. The trial court erred in awarding the plaintiff punitive damages in addition to attorney's fees and costs; the plaintiff having failed to prove the count alleging a violation of CUTPA, the award of punitive damages could only have been made with respect to her claim of fraud, and because an award of punitive damages on a claim of common-law fraud may include only attorney's fees and costs, both of which the court awarded to the plaintiff separate and apart from its punitive damages award, the court committed plain error in awarding her an additional $175,000 in punitive damages.

Argued October 11—officially released December 19, 2017

*Procedural History*

Action to recover damages for, inter alia, breach of fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the action was withdrawn as against the defendant Judah Liberman, and the defendant 58 N. Walnut, LLC, et al., were defaulted for failure to appear; thereafter, the named defendant et al. filed a counterclaim; subsequently, the named defendant et al. were defaulted for failure to appear at a trial management conference; thereafter, following a hearing in damages, the court, *Brazzel-Massaro, J.*, rendered judgment for the plaintiff; subsequently, the court denied the motion to open filed by the named defendant et al., and the named defendant et al. appealed to this court. *Reversed in part; vacated in part; judgment directed.*

*Kerry M. Wisser*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellants (named defendant et al.).

*Taryn D. Martin*, with whom, on the brief, was *Robert A. Ziegler*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this action arising from a real estate investment agreement, the defendants Isaac Halpert and Marsha Halpert[1] appeal from the judgment of the trial court denying their motion to open the judgment rendered against them following a hearing in damages held after they had been defaulted for failing to appear at a trial management conference. The trial court held a hearing in damages and awarded the plaintiff, Malkie Wiederman, $600,892.58 in compensatory and punitive damages, attorney's fees and costs, on her claims of breach of fiduciary duty, fraud, conversion and bad faith. The defendants claim on appeal that (1) the trial court lacked subject matter jurisdiction to hear the plaintiff's claims because the plaintiff did not have standing to assert them; (2) the trial court failed to make a determination as to the legal sufficiency of the plaintiff's claims of breach of fiduciary duty, fraud, conversion and bad faith; (3) there was no causal connection between the defendants' allegedly wrongful conduct and the losses for which the court awarded the plaintiff compensatory damages; (4) the trial court erred in finding Marsha Halpert liable for fraud and conversion absent sufficient allegations of those claims against her; and (5) the court erred in awarding the plaintiff punitive damages in addition to attorney's fees on her claim of fraud. The defendants concede that they failed to raise any of the foregoing claims in their motion to open the judgment, and thus that the law ordinarily precludes this court from considering those claims on appeal. The defendants nevertheless seek review of their claim that court erred in denying their motion to open on the grounds that the plaintiff lacked standing to assert her claims against the defendants and thus that the trial court lacked subject matter jurisdiction, and that the judgment contained plain errors that resulted in manifest injustice. We agree that the plaintiff failed to properly plead a claim for conversion against Marsha Halpert, and thus that the court's judgment finding her liable for conversion must be reversed. We also agree with the defendants' claim that the court committed plain error in awarding the plaintiff punitive damages in addition to attorney's fees on her claim of fraud, and thus we conclude that the award of punitive damages must be vacated.[2]

The trial court set forth the following factual and procedural history in its February 5, 2016 memorandum of decision. "The plaintiff . . . filed this action on November 13, 2008 . . . and filed an amended complaint dated June 14, 2011, which is the operative complaint. . . . The amended complaint contains eleven separate counts. The case has been in the court for a number of years and has an extensive history. The court entered a scheduling order for trial of this matter for March 3, 2015, which was continued until March 17,

2015 and thereafter until October 20, 2015. Counsel for the defendants requested the latest continuance to a trial date of January 28, 2016, with the trial management conference scheduled for January 14, 2016. Counsel for the . . . defendants failed to appear on January 14, 2016 for the trial management conference. The court, as well as [the] plaintiff's counsel, attempted to contact [counsel for the defendants,] Attorney [David] Rosenberg, for the conference. The notice of the conference was sent to all parties after the court granted the defendants' request for a continuance on October 13, 2015. The notice required that the parties submit a joint trial management report and appear at 9:30 a.m. On January 14, 2016, only the plaintiff and the plaintiff's counsel appeared. Counsel [for the plaintiff] represented that [Attorney Rosenberg] did not respond to requests to supplement the proposed joint trial management report provided to him. The court requested that counsel [for the plaintiff] contact Attorney Rosenberg and wait for a reasonable time period for the defendants to appear. [Attorney Rosenberg] did not appear and at 11:07 a.m., the court entered a default for failure to attend the conference. Notice was sent to counsel for the defendants that the court would conduct a hearing [in] damages on the scheduled January 28, 2016 trial date. Counsel for the plaintiff subpoenaed . . . Isaac Halpert, to appear on January 28, 2016. [Isaac] Halpert did not appear for the trial management conference or appear in response to the subpoena on the trial date.

"The court . . . proceeded on the hearing [in] damages on January 28, 2016. . . . Neither [Attorney Rosenberg] nor the subpoenaed defendant [Isaac Halpert] appeared for the hearing [in] damages. The court heard testimony from [the plaintiff] and received exhibits in support of her claim for damages." (Footnote omitted.)

After noting that, "[u]pon default, the plaintiff ordinarily becomes entitled to recover damages," the court reasoned: "The defendant failed to appear for the trial management conference on January 14, 2016, or at the trial which was scheduled as a hearing [in] damages as a result of the default entered on January 14, 2016. The court entered a default as to all parties but for purposes of this decision, the court is addressing only the two individuals, Isaac Halpert and Marsha Halpert. At the hearing, the plaintiff . . . proceeded as to count one, count four, count five, count six, and count ten [alleging, respectively] breach of fiduciary duty . . . fraud . . . conversion . . . bad faith and . . . [violation of the Connecticut Unfair Practices Act (CUTPA), General Statutes § 42-110a et seq.].[3]

"The plaintiff offered testimony and exhibits at the hearing. She testified that she met Isaac Halpert and he presented himself as an experienced real estate developer. He took her to several properties in Water-

bury which he had redeveloped and thereafter she invested in the several properties with him. This action arises out of the agreement between the plaintiff and the defendants, which created several limited liability companies [LLCs] for a number of development properties and the actions of the defendants which are clearly set forth in the complaint and further supported with the exhibits that were admitted during the hearing before this court. The plaintiff introduced 51 separate exhibits during her testimony.

"The plaintiff became a 50 [percent] member in the following limited liability companies: (1) 58 North Walnut, LLC; (2) 94 Cherry Street, LLC; (3) 100 Burton Street, LLC; (4) 44 Linden Street, LLC; (5) 49 Webb Street, LLC; (6) 15 Cossett Street, LLC; and (7) 31 Webb Street, LLC. Each of the [LLCs] purchased property in the city of Waterbury for development. In addition to these properties, the plaintiff was also involved in the purchase of property at 35 Adams Street in the city of Waterbury. This property was resold to the city of Waterbury and the sale proceeds of $65,262.19 were to be divided with 50 [percent] to the plaintiff for her investment. As to the remaining properties for each of the LLCs the plaintiff invested sums of money and she was to receive 50 [percent] of the investment and profits. The defendants, Isaac Halpert, Marsha Halpert, and Judah Liberman each had a percentage interest in the properties which consumed the remaining 50 [percent]. The defendant Isaac Halpert agreed to conduct the day-to-day management of the properties.

"At the hearing, the plaintiff provided the court with a number of exhibits, including e-mails that questioned expenses, payments, payouts, location of checks, funds, and actions of Isaac Halpert which follow the allegations in the complaint regarding his commingling of the accounts, misappropriation of funds, withholding of funds, failing to account for or deposit funds collected, converting the funds to his and his wife's own personal use, and the securing of funds by use of fraudulent documents.

"The exhibits provide abundant support for damages as to counts one, four, five and six of the complaint. The plaintiff has made a [CUTPA] claim in count ten for damages pursuant to [General Statutes] § 42-110b. The exhibits and testimony of the plaintiff do not indicate that she has satisfied the requirements pursuant to [General Statutes] § 42-110g (c) and thus the court does not award a judgment for the plaintiff on this count only. As to the remaining counts, the court awards judgment and damages after review of the exhibits admitted in support of the plaintiff's testimony. In particular, the plaintiff has supported her testimony with an exhibit prepared by her that identifies the funds taken by [Isaac] Halpert and the investment summary for purposes of the claims of breach of fiduciary duty,

fraud, conversion and bad faith. As to the claim for compensatory damages for these counts, the evidence supports an award of compensatory damages in the amount $271,250 and $95,797.79 for the funds proven by the [plaintiff] as alleged in the conversion count. The court awards punitive damages as claimed in [the] complaint in the amount of $175,000. The court awards attorney fees in the amount of $57,337.50 on the counts for fraud and conversion, and costs in the amount of $1,507.29. . . .

"Based upon the above, judgment is entered in favor of the plaintiff in the amount of $367,047.79 compensatory damages and punitive damages in the amount of $175,000 as to counts four and five. The court awards attorney fees in the amount of $57,337.50 and costs of $1,507.29." (Footnotes added and omitted.)

Thereafter, on May 10, 2016, the defendants filed a motion to open the judgment, to which the plaintiff filed an objection. The court held a hearing on the defendants' motion to open the judgment and the plaintiff's objection thereto, after which the court issued a written order, in which it denied the defendants' motion as follows: "The plaintiff has objected and the court noted specifically that in addition to the attempts by the plaintiff to contact [Attorney Rosenberg] when he failed to appear for a trial management conference and thereafter for the trial date which was requested by him, the defendant[s] had received notices by the court, the defendant Isaac Halpert had been served in hand with a subpoena to testify on January 28, 2016, when the matter was scheduled for a hearing and failed to come, and months have passed before the defendant[s] [sought] to open although notices were sent to [Attorney Rosenberg's] old office address as well as his old and new e-mail addresses and he failed to respond. Counsel for the plaintiff as well as this court made many attempts to keep the defendant[s] aware of the status of the action but the defendant[s] remained unresponsive."

This appeal followed. The defendants now raise several claims of error as to the court's judgment, as set forth herein, none of which were raised in their motion to open the judgment. "The denial of a motion to open is an appealable final judgment. . . . Although a motion to open can be filed within four months of a judgment . . . the filing of such a motion does not extend the appeal period for challenging the merits of the underlying judgment unless filed within the [twenty day period provided by Practice Book § 63-1]. . . . When a motion to open is filed more than twenty days after the judgment, the appeal from the denial of that motion can test only whether the trial court abused its discretion in failing to open the judgment and not the propriety of the merits of the underlying judgment. . . . This is so because otherwise the same issues that could

have been resolved if timely raised would nevertheless be resolved, which would, in effect, extend the time to appeal. . . .

"The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book [§ 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. . . .

"Because opening a judgment is a matter of discretion, the trial court [is] not required to open the judgment to consider a claim not previously raised. The exercise of equitable authority is vested in the discretion of the trial court and is subject only to limited review on appeal. . . . We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Emphasis omitted; internal quotation marks omitted.) *Sabrina C.* v. *Fortin*, 176 Conn. App. 730, 746–47, 170 A.3d 100 (2017).

In light of the foregoing principles, the defendants acknowledge that "[t]he merits of the underlying judgment are ordinarily not reviewable when a party appeals only the denial of a motion to open judgment." The defendants do not argue that the trial court abused its discretion in denying their motion to open the judgment. The defendants argue, rather, that the judgment should be opened because their claims of error either implicate the trial court's subject matter jurisdiction or the court's actions constituted plain error that resulted in manifest injustice. We address the defendants' claims in turn.

I

We first address the defendants' claim that the trial court did not have jurisdiction to hear the plaintiff's claims because the plaintiff lacked standing to assert them. The defendants argue that the injuries allegedly sustained by the plaintiff were derivative of injuries to the LLCs, and thus that the plaintiff did not have standing to assert those claims. We disagree.

"If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . [A] claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings . . . including on appeal . . . . Because the defendants' claim implicates the trial court's subject matter jurisdiction, we conclude that it is reviewable even though the defendants have raised it for the first time on appeal." (Citations omitted; internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 506, 43 A.3d 69 (2012). "A determination

regarding a trial court's subject matter jurisdiction is a question of law." (Internal quotation marks omitted.) *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 821, 82 A.3d 602 (2014).

"[S]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Nevertheless, [s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) Id., 820–21. "These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 155, 953 A.2d 1 (2008).

"Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguably protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214–15, 982 A.2d 1053 (2009). "For purposes of standing, the plaintiffs need only allege a *colorable* claim of injury as standing exists to attempt to vindicate *arguably* protected interests." (Emphasis added; internal quotation marks omitted.) Id., 216–17. "It is well established that, in determining

whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 335, 857 A.2d 348 (2004).

"[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect." *Connecticut State Medical Society* v. *Oxford Health Plans (CT), Inc.*, 272 Conn. 469, 481, 863 A.2d 645 (2005). "[I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001).

"A distinction must be made between the right of a shareholder to bring suit in an individual capacity as the sole party injured, and his right to sue derivatively on behalf of the corporation alleged to be injured. . . . Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation—to the shareholders collectively. . . . In this regard, it is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding 'secondarily,' deriving his rights from the corporation which is alleged to have been wronged. . . . It is, however, well settled that if the injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual. . . . In such a case, the plaintiff-shareholder sustains a loss separate and distinct from that of the corporation, or from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually."[4] (Citations omitted; footnote omitted.) *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 281–82, 422 A.2d 311 (1979). "When a party meets the requirements of the test for determining classical aggrievement, it is irrelevant for purposes of standing whether such party also is a member of a limited liability company that may or may not have related claims of its own." *Wilcox* v. *Webster Ins., Inc.*, supra, 294 Conn. 220–21.

The defendants argue that "the allegations in the operative complaint and [the] plaintiff's testimony at the hearing in damages make clear that [the] plaintiff

based her claims on harm to the LLCs." We disagree. The plaintiff did not allege that she had standing solely by reason of being a member of the LLCs. The plaintiff's complaint contained allegations of harm to her, separate and distinct from the harm potentially sustained by the LLCs. Here, the plaintiff alleged that Isaac Halpert, who allegedly conducted the day-to-day management of the LLCs, did so in a manner that damaged her directly. The plaintiff claimed that she never received any portion of the profits or distributions from the properties and that the defendants, instead of fulfilling their contractual and fiduciary obligations to so distribute those funds to her, misappropriated, wasted and mismanaged them. She alleged that her investment was "misappropriated, used to maintain properties unrelated to this investment endeavor, and/or wasted." The plaintiff further claimed that the defendants failed to provide to her an accounting of their use of funds to which she allegedly was entitled and forged her signature on certain financial documents. The injuries claimed by the plaintiff were not remote, indirect or derivative, but were peculiar to her. We conclude that the plaintiff established a colorable claim of injury, and thus that she was aggrieved by the defendants' alleged conduct. Accordingly, we reject the defendants' claim that the trial court lacked subject matter jurisdiction to hear the plaintiff's claims.

## II

We next address with the defendants' claim that their motion to open should have been granted because the trial court's judgment is rife with errors, and those errors are so plain that they resulted in manifest injustice.

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [Previously], we described the two-pronged nature of the plain error doctrine: [An appel-

lant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice. . . .

"It is axiomatic that, [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812–14, 155 A.3d 209 (2017). With these principles in mind, we address the defendants' claims of plain error in turn.

### A

The defendants' first claim of plain error is that the trial court failed to make explicit determinations as to the legal sufficiency of the plaintiff's claims. The defendants claim that in stating, "[u]pon default, the plaintiff ordinarily becomes entitled to recover damages," the trial court "glossed over the qualifier of 'ordinarily'" and, "incorrectly assumed that the entry of default had conclusively established liability as to such claims." We disagree.

We first note that the trial court's statement of the law was correct and there was nothing in the record that indicates that the court "glossed over" any aspect of that law. In its memorandum of decision, the court specifically found that the plaintiff proved damages on her counts of breach of fiduciary duty, conversion, fraud and bad faith, but that she failed to meet her burden of establishing a CUTPA violation. It is evident from these statements that the court considered the sufficiency of the plaintiff's pleading and proof in determining whether to award damages to the plaintiff.

Moreover, it is well established that "[u]nless the contrary appears in the record, we will presume that the trial court acted properly and considered applicable legal principles. . . . Stated slightly differently, this court does not presume error by the trial court where the party challenging the court's ruling failed to satisfy its burden of demonstrating that it was factually or legally untenable." (Citations omitted; internal quotation marks omitted.) *Luongo Construction & Development, LLC* v. *MacFarlane*, 176 Conn. App. 272, 285–86, 170 A.3d 157 (2017). Although the court did not explicitly address the legal sufficiency of the plaintiff's claims, it necessarily found them sufficient when it awarded damages on those claims. We cannot conclude that the

court committed plain error in this regard.

B

The defendants next claim that the court committed plain error in finding Marsha Halpert liable to the plaintiff for fraud and conversion where the plaintiff's allegations against her failed to make such a claim.

"The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 299–300, 94 A.3d 553 (2014).

1

The defendants argue that it was plain error for the trial court to find Marsha Halpert liable for fraud because the plaintiff did not properly assert a claim of fraud against her. We disagree.

"The essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . [T]he party to whom the false representation was made [must claim] to have relied on that representation and to have suffered harm as a result of the reliance." (Internal quotation marks omitted.) *Sturm* v. *Harb Development*, *LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010).

A fair reading of the plaintiff's complaint as a whole reveals that the plaintiff properly set forth a claim of fraud against both Isaac Halpert and Marsha Halpert. In count four of her complaint, the plaintiff alleged that she was induced by the representations of Isaac Halpert to invest in the LLCs and that he knew, when he so

induced her, that her investment would be "misappropriated, used to maintain properties unrelated to this investment endeavor, and/or wasted." She further alleged that she relied upon the representations of both Isaac Halpert and Marsha Halpert "as to the organization, structure and day-to-day management of the investment endeavor." The plaintiff also alleged that both Isaac Halpert and Marsha Halpert deposited rent checks, to which she was entitled to 50 percent, into their personal bank accounts, have used LLC accounts for personal matters and that they both were involved in forging her name on financial documents and refused to account for the funds to which she was claiming she was entitled. Considering the plaintiff's complaint in its entirety, we conclude that the allegations therein sufficiently set forth a claim of fraud against Marsha Halpert.

2

The defendants also claim that the court erred in finding Marsha Halpert liable to the plaintiff for conversion because the plaintiff's complaint did not sufficiently allege a claim of conversion against Marsha Halpert. We agree.

The plaintiff's claim for conversion, which "occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights"; (internal quotation marks omitted) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 169, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998); is set forth in the fifth count of her complaint, which is entitled, "As Against Isaac Halpert." The title of each count of the plaintiff's complaint indicates the subject of the allegations, but only some of those titles list the name of Marsha Halpert. The conversion count clearly and unequivocally applies only to Isaac Halpert, both by its title and by the allegations set forth therein which describe only the conduct of Isaac Halpert. The plaintiff's count for conversion contains no allegations whatsoever that reasonably can be construed to apply to Marsha Halpert. The court's finding of liability for conversion against Marsha Halpert thus cannot stand.[5]

C

The defendants also claim that the court committed plain error in awarding compensatory damages to the plaintiff in the absence of a causal connection between the losses for which she was awarded and the defendants' allegedly wrongful conduct.

"[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reason-

able certainty. . . . Thus, [t]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Internal quotation marks omitted.) *Milford Bank* v. *Phoenix Contracting Group, Inc.*, 143 Conn. App. 519, 525, 72 A.3d 55 (2013).

Here, the court found that the plaintiff's exhibits provided "abundant support for damages" as to her claims for breach of fiduciary duty, fraud, conversion and bad faith. The court awarded "compensatory damages in the amount of $271,250 and $95,797.79 for the funds proven by the defendant as alleged in the conversion count." In so doing, the court specifically referred to the plaintiff's testimony and "an exhibit prepared by her that identifies the funds taken by [Isaac] Halpert and the investment summary for purposes of the claims of breach of fiduciary duty, fraud, conversion and bad faith." The court did not explicitly identify the damages awarded on each of the plaintiff's claims, nor did the defendants ask it to do so. We cannot conclude, on the record before us, that the court committed a patent, readily discernible or obvious error in awarding damages as claimed by the defendants.

D

The defendants finally claim that the court erred in awarding the plaintiff punitive damages in addition to attorney's fees in the absence of any legal authority to do so. In her complaint, the plaintiff sought punitive damages and attorney's fees on her claims for fraud and violation of CUTPA. Because the court determined that the plaintiff failed to prove her CUTPA claim, its award of punitive damages could only have been made on her claim of fraud.

"Punitive damages may be awarded upon a showing of fraud." *Plikus* v. *Plikus*, 26 Conn. App. 174, 180, 599 A.2d 392 (1991). Common-law punitive damages, however, are limited, under well established Connecticut law, "to litigation expenses, such as attorney's fees, less taxable costs." *Hylton* v. *Gunter*, 313 Conn. 472, 484, 97 A.3d 970 (2014).

Here, the plaintiff submitted an affidavit of attorney's fees totalling $58,817.50, all of which the trial court awarded, with the exception of $1180, which represented time spent by an individual unknown to the court. The plaintiff also submitted a bill of costs totalling $1777.29. The court awarded costs in the amount of $1507.29, not allowing the plaintiff's claim of $270 for "depositions of in-state witnesses" because the plaintiff failed to submit proof of payment of those costs. The court awarded punitive damages in the amount of $175,000. The court did not articulate the legal or factual basis of that award, nor is any such basis ascertainable from the record. Because an award of punitive damages

on a claim of common-law fraud may include only attorney's fees and costs, both of which the court awarded to the plaintiff separate and apart from its punitive damages award, the court committed plain error in awarding her an additional $175,000 in punitive damages. That award, which is patently erroneous, cannot stand.

The judgment is reversed as against Marsha Halpert for conversion; the award of punitive damages in the amount of $175,000 is vacated; and the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The original complaint also named as defendants Judah Liberman, 58 N. Walnut, LLC, 94 Cherry Street, LLC, 100 Burton Street, LLC, 44 Linden, LLC, 49 Webb Street, LLC, 15 Cossett, LLC, 31 Webb, LLC, and MJM Management, LLC. The plaintiff withdrew the complaint as to Judah Liberman on February 2, 2016. After the original counsel for the Halperts and the various limited liability companies was permitted to withdraw his appearance in August, 2012, no new appearance was filed on behalf of the LLCs and those parties therefore were defaulted for failing to appear. Judgment has not been entered with respect to those parties and they are not parties to this appeal. Any references to the defendants in this opinion are to Isaac Halpert and Marsha Halpert.

[2] The defendants also ask this court to exercise our supervisory powers to review and reverse the judgment of the trial court. As our Supreme Court previously has explained, "bypass doctrines permitting the review of unpreserved claims such as [*Golding*] . . . and plain error [claims], are generally adequate to protect the rights of the defendant and the integrity of the judicial system . . . . [T]he supervisory authority of this state's appellate courts is not intended to serve as a bypass to the bypass, permitting the review of unpreserved claims of case specific error—constitutional or not—that are not otherwise amenable to relief under *Golding* or the plain error doctrine. . . . Consistent with this general principle, we will reverse a [judgment] under our supervisory powers only in the rare case that fairness and justice demand it. [T]he exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of [the] utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Citations omitted; internal quotation marks omitted.) *State* v. *Reyes*, 325 Conn. 815, 822–23, 160 A.3d 323 (2017); see *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). This case presents no such circumstances.

[3] Although the plaintiff asserted additional claims against the defendants in her complaint, she abandoned those claims at the beginning of the hearing in damages.

[4] "For example, where a sole minority stockholder . . . is the victim of a fraud perpetrated by the sole controlling stockholder . . . the injury, and the action for redress, cannot be said to belong merely to the corporation. If the controlling majority stockholder seeks to injure the minority stockholder through the means of looting the corporation or so wrecking it that the minority stockholder would get nothing out of his assets, the claim resulting therefrom is sufficient to constitute an individual action. . . . Likewise, where an injury sustained to a shareholder's stock is peculiar to him alone, and does not fall alike upon other stockholders, the shareholder has an individual cause of action." (Citations omitted.) *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 282 n.9, 422 A.2d 311 (1979).

Moreover, our Supreme Court has recognized that partners are generally "bound in a fiduciary relationship and act as trustees toward each other and toward the partnership." (Internal quotation marks omitted.) *Spector* v. *Konover*, 57 Conn. App. 121, 127, 747 A.2d 39, cert. denied, 254 Conn. 913, 759 A.2d 507 (2000). "[I]t is a thoroughly well-settled equitable rule that any one acting in a fiduciary relation shall not be permitted to make use of that relation to benefit his own personal interest. This rule is strict in its requirements and in its operation. It extends to all transactions where the

individual's personal interests may be brought into conflict with his acts in the fiduciary capacity, and it works independently of the question whether there was fraud or whether there was good intention. . . . The rule applies alike to agents, *partners*, guardians, executors and administrators." (Emphasis in original; internal quotation marks omitted.) Id., 128.

[5] Although the court improperly found Marsha Halpert liable for conversion, it did not apportion its award of damages on the conversion count between the two defendants and the defendants did not ask the court to do so. The court's award of damages on the conversion count thus remains intact, but applies to Isaac Halpert only.