******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARGARET JACKSON ET AL. *v.* LAUREN K.
DRURY ET AL.
(AC 40579)

Lavine, Bright and Bear, Js.

*Syllabus*

The plaintiffs, B, M, and N, beneficiaries of a settlor's estate, appealed to
the trial court from an order by the Probate Court. After the settlor's
estate was initially distributed, according to a certain trust instrument,
another beneficiary, J, died, and subtrusts were created for the benefit
of J's children. Upon discovery of unclaimed funds belonging to the
settlor, the Probate Court appointed a temporary administrator to dis-
tribute the unclaimed funds to all beneficiaries, including J's children.
The administrator petitioned the Probate Court to dissolve the subtrusts
created for the benefit of J's children to allow him to distribute the
unclaimed funds directly to the beneficiaries. The Probate Court granted
the petition and, thereafter, B filed her first appeal to the trial court in
2015 against, inter alios, the defendant trust company, claiming that she
was aggrieved by the Probate Court's decree dissolving the subtrusts.
The trial court granted the defendants' motion to dismiss B's appeal on
the ground that she was not aggrieved by the order and decree of the
Probate Court. Subsequently, M and N sent a letter to the Probate Court,
claiming that the trust company had breached its fiduciary duties and
had misappropriated funds by imposing its litigation costs related to
the 2015 appeal against their subtrust funds. In response, the Probate
Court held a hearing on the matter and issued a decree, finding that
the trust company had acted in good faith pursuant to its fiduciary duty
and that it would take no further action at that time. Thereafter, M and N
resolved their dispute with the trust company and signed indemnification
agreements to that effect. Subsequently, B informed the trust company's
attorney that she intended to file an appeal against the trust company
for bad faith and mismanagement of the trust in connection with the
Probate Court's decree regarding the litigation costs of the first appeal.
Thereafter, the trust company's attorney sent M and N a letter notifying
them that if B pursued her appeal, M and N would be held responsible
for the legal fees incurred, due to the indemnification agreements they
had previously signed. Subsequently, B, M, and N filed the present appeal
against, inter alios, the trust company. The trial court granted the trust
company's motion to dismiss the appeal for lack of subject matter
jurisdiction on the ground that the appeal was untimely pursuant to the
statute (§ 45a-186 [a]) that provides that an appeal from a Probate Court
order must be filed in the Superior Court within thirty days of when
the order was mailed to the parties. On appeal to this court, the plaintiffs
claimed that the trial court improperly dismissed their appeal. *Held:*

1. Because B was not aggrieved by the Probate Court decree, she lacked
   standing to appeal, as she failed to allege a colorable claim of direct
   personal injury, and the lack of aggrievement was a defect that deprived
   the Superior Court of jurisdiction to hear the probate appeal; the plain-
   tiffs appealed from the Probate Court's decree and finding that the
   attorney's fees charged to the subtrusts of M and N for the trust com-
   pany's defense of the 2015 appeal were reasonable, but because B's
   trust was in no way affected, her alleged injury, if any, was indirect and
   amorphous, as it derived from the decree of the Probate Court that
   pertained to the subtrusts of M and N, and, therefore, she was not
   aggrieved and lacked standing to appeal.

2. The trial court properly dismissed the probate appeal of M and N, as they
   failed to comply with the plain language of § 45a-186 (a), which required
   them to file the appeal within thirty days of when the Probate Court's
   order was mailed: M and N failed to file an appeal from the Probate
   Court's decree within thirty days of when it was mailed, and although
   they sought to have the trial court reconsider its decision by alleging
   that the trust company was guilty of fraud and deception, the thirty day
   appeal period had expired before the time of the alleged deceptive acts,
   and the plaintiffs' claim that the doctrine of equitable estoppel tolled

the late filing of their appeal was unavailing, as the doctrine of equitable tolling does not apply to subject matter jurisdiction, a court has no authority to adjudicate the action before it when it lacks subject matter jurisdiction, and even if the jurisdictional time limit for filing a probate appeal could be equitably tolled, the claim of M and N failed because the conduct of the trust company of which they complained occurred after the jurisdictional deadline had passed; moreover, the alleged factual basis of the plaintiffs' claim on appeal was not material to the issue decided by the Probate Court, which was the reasonableness of the attorney's fees incurred by the trust company and not whether the trust company committed fraud and misappropriated the funds, and the allegations were not within the jurisdictional purview of the Superior Court sitting as a court of probate.

Argued March 4—officially released August 6, 2019

*Procedural History*

Appeal from the order and decree of the Probate Court for the district of New London, brought to the Superior Court in the judicial district of New London, where the court, *Bates, J.*, granted the motion to dismiss the appeal filed by the defendant The Washington Trust Company and rendered judgment thereon, and the plaintiffs appealed to this court. *Affirmed.*

*Nancy Burton*, self-represented, with whom, on the brief, were *Margaret Jackson* and *Miarden Jackson*, self-represented, the appellants (plaintiffs).

*Kenneth J. McDonnell*, for the appellee (defendant The Washington Trust Company).

*Opinion*

LAVINE, J. The self-represented plaintiffs Nancy Burton (Burton), and Margaret Jackson and Miarden Jackson (Jackson plaintiffs), appeal from the judgment of dismissal rendered by the Superior Court in favor of the defendants, The Washington Trust Company (trust company) and Lauren K. Drury, vice president and senior fiduciary officer of the trust company.[1] The plaintiffs had appealed to the Superior Court from a decision of the Probate Court for the district of New London. On appeal, the plaintiffs have asserted numerous claims as to why the court erred in dismissing their probate appeal[2] but principally argue that the court improperly dismissed their appeal as untimely. In its brief to this court, the trust company claims that Burton[3] is not aggrieved by the Probate Court's decision and, therefore, her appeal should be dismissed. We agree that Burton is not aggrieved by the Probate Court's decision. We also conclude that the Superior Court properly dismissed the plaintiffs' probate appeal because it was not timely filed. We, therefore, affirm the judgment of the Superior Court.

We begin with a summary of the underlying facts and procedural history, which we have gleaned from our review of the record in the present case and the file in *Burton* v. *Burton*, Superior Court, judicial district of New London, Docket No. CV-15-5014962-S (May 10, 2017) (2015 appeal).[4] The issues in both cases are related to the June K. Burton Revocable Trust (trust) that was created by June K. Burton (settlor) on February 19, 1998. Burton and Margaret Jackson are two of the settlor's children, and Miarden Jackson is the settlor's grandson. When the settlor died on March 23, 2003, the trust company succeeded her as trustee. The settlor's will directed that her residuary estate was to be placed in the trust and distributed, pursuant to a formula, to the settlor's children, i.e., Margaret Jackson, Burton, and John Burton; to her grandchildren; and to one other person. The trust company distributed the trust property in accordance with the trust instrument in 2008. John Burton died on December 26, 2013, and subtrusts were created for the benefit of his children.[5]

Circa 2012, Burton learned that the treasurer of the state of Connecticut was holding unclaimed property (funds) of the settlor. The Probate Court appointed Burton as temporary administrator of the settlor's estate for the purpose of filing a claim for the funds. Due to a delay in the release of the funds, Burton's temporary appointment expired, and the Probate Court appointed Attorney Patrick L. Poeschl as temporary administrator of the settlor's estate to claim the funds. Upon receipt of the funds, Poeschl placed the funds in an escrow account and applied to the Probate Court to allow the amended final accounting and an order of distribution of the settlor's estate. He also petitioned

the Probate Court to terminate the subtrusts, allowing him to distribute the funds directly to the beneficiaries of the subtrusts. Burton opposed Poeschl's proposed distribution, claiming that it was at odds with the distribution directed by the trust instrument. The Probate Court approved Poeschl's proposal and, on June 30, 2015, issued an order and decree granting Poeschl's application and petition.[6]

On September 2, 2015, Burton commenced the 2015 appeal from the June 30, 2015 order and decree and filed a complaint against Orsolya Burton as guardian of the minor Julia Burton and as executrix on the estate of John Burton, and against the trust company.[7] In the 2015 appeal, Burton alleged, among other things, that Poeschl's distribution awarded John Burton's lapsed one-sixth share of the trust to Orsolya Burton, as executrix of his estate, thereby divesting John Burton's "three children" of their rightful shares pursuant to the trust instrument. She also alleged that, as a named beneficiary of the trust, she is entitled to a one-sixth share of any and all trust property and that termination of the trust in accordance with the terms proposed by Poeschl diminished the monetary value of the trust property to which she is lawfully entitled. She claimed that she was aggrieved by the order of the Probate Court because she will suffer an economic loss directly attributable to the decree unless it is set aside.

Orsolya Burton filed a motion to dismiss the appeal claiming that Burton was not aggrieved by the June 30, 2015 order and decree. The trust company joined the motion to dismiss. The trial court, *Vacchelli, J.*, granted the motion to dismiss in a memorandum of decision dated January 29, 2016. The court concluded that Burton was not aggrieved by the order and decree of the Probate Court, which permitted the bypass of certain trusts and allowed the settlor's funds to be distributed to the settlor's beneficiaries.[8]

On July 15, 2016, the Jackson plaintiffs wrote a letter to the Probate Court, stating, in part, that the trust company "has breached its fiduciary duties and misappropriated $6670 of our subtrust funds by imposing its litigation costs from [the 2015 appeal] onto our undisputed and completely separate inheritance. We ask Your Honor to order [the trust company] to restore our accounts in full and release the balance of our subtrusts immediately."[9] In response to their request, the Probate Court held a hearing on August 23, 2016, and, thereafter, on *August 26, 2016*, mailed a document titled "decree" to the plaintiffs, Kaplan, and the trust company. In the document, the Probate Court stated that it found that the trust company "acted in good faith pursuant to [its] fiduciary duty in obtaining counsel for the [2015] appeal [and the] . . . attorney's fees incurred for the time spent and hourly rate are reasonable."[10] Consequently, the Probate Court issued a decree stating: "the Court

takes no action at this time."[11] On August 29, 2016, the Jackson plaintiffs apparently resolved their dispute with the trust company, and each of them signed a Receipt, Release, and Indemnification Agreement.[12]

On October 3, 2016, Burton sent an e-mail to Drury stating that she was notifying Drury "in advance of [her] intended filing this week of a probate appeal as well as a separate action seeking monetary damages for [the trust company's] bad faith and mismanagement of the . . . trust."[13] The probate appeal to which Burton was referring concerned the proceedings in the Probate Court on August 23, 2016. Thereafter, Drury sent an e-mail to the Jackson plaintiffs informing them that if Burton "proceeds as she has indicated, you will be held personally responsible for the legal fees incurred [by the trust company] due to the Receipt, Release and Indemnity Agreements you previously signed."

On *October 11, 2016*, the plaintiffs filed the present probate appeal. In their complaint, they alleged that on August 23, 2016, the Probate Court issued a decree that was mailed to them on *August 26, 2016*. On November 10, 2016, Kaplan, on behalf of Drury and the trust company, filed a motion to dismiss the probate appeal on the ground that it was not filed within thirty days of the date the decree was mailed as required by General Statutes § 45-186 (a), and, therefore, the Superior Court lacked subject matter jurisdiction. Burton filed an objection to the motion to dismiss.[14] The court, *Bates, J.*, granted the motion to dismiss and issued a memorandum of decision on May 10, 2017.

In his memorandum of decision, Judge Bates found that the Probate Court decree was mailed on August 26, 2016, that the appeal was filed on October 11, 2016, and that the plaintiffs conceded that the appeal was commenced after the limitation period of § 45a-186 (a), which provides in relevant part that probate appeals are to be taken "not later than thirty days after the mailing of an order, denial or decree. . . ." The court found that the plaintiffs' appeal was taken well after the thirty day period. Although the plaintiffs made many arguments regarding the fairness of the Probate Court's decision regarding the distribution of assets, they never established a basis for ignoring the applicable appeal period. "[T]he meaning of the statute is plain and unambiguous. A party appealing to the Superior Court from probate is required to commence the appeal by filing the complaint with the court within thirty days of the mailing of the challenged action." *Gates* v. *Gates*, 51 Conn. Supp. 148, 152-53, 975 A.2d 147 (2008), aff'd, 115 Conn. App. 293, 971 A.2d 852, cert. denied, 293 Conn. 924, 980 A.2d 910 (2009). Judge Bates, therefore, stated that the appeal deadline was jurisdictional and concluded that, without compliance with the deadline, the decision of the Probate Court must stand. The court dismissed the plaintiffs' appeal for lack of jurisdiction.

Thereafter, on May 26, 2017, Burton filed a motion for reargument, which the court denied on June 6, 2017.[15] Burton then filed two motions for articulation in the trial court on June 12, 2017, on matters not directly related to the dismissal of the probate appeal.[16] The plaintiffs appealed to this court on June 27, 2017.

We now turn to the two issues before us: (1) whether Burton was aggrieved by the Probate Court's decree and, therefore, lacked standing to appeal, and (2) whether the Superior Court properly dismissed the plaintiffs' appeal from the Probate Court's decree mailed on August 26, 2016, because it was untimely.

I

The trust company claims that Burton was not aggrieved by the Probate Court's decree and, therefore, she lacked standing to appeal. We agree that Burton lacked standing to appeal.

The following facts are relevant to the trust company's claim. In its brief on appeal, the trust company stated in a footnote that Burton was not aggrieved by the Probate Court's decree that was mailed on August 26, 2016, and, therefore, she lacked standing to argue the appeal. The trust company also noted that the plaintiffs sought to have the court order the trust company to restore the attorney's fees approved by the Probate Court to the Jackson subtrusts. The trust company, however, did not file a motion to dismiss Burton's appeal, and this court did not issue an order directing the parties to be prepared at oral argument to address the question of Burton's standing. At oral argument, we asked Burton to explain the basis of her allegation that she was aggrieved by the Probate Court's decree.[17] Burton objected to the inquiry on the ground that she had no notice that she would be expected to address the question of her standing and requested an opportunity to brief the issue. We granted her request to file a memorandum of law with respect to whether she was aggrieved and permitted the trust company to file a response.

Burton filed successive memoranda of law and stated that the bases of her "aggrievement are manifest in the record and relate in part to the fact that the release[s] which [the Probate Court] directed the Jacksons to sign had hidden, unexpressed potential negative consequences for [her]. . . . That is . . . [what] Drury stated in her October 5, 2016 email to the Jacksons . . . sent ten days after the expiration of the appeal period on September 26, 2016."[18] In response to Burton, the trust company argued, in part, that Burton had no legally protected interest in the Estate of June K. Burton that was adversely affected by the Probate Court's decree of August 23, 2016, approving the charge of attorney's fees to the Jackson plaintiffs.

"The question of whether an order from probate

aggrieves a party concerns a trial court's subject matter jurisdiction." *In re Probate Appeal of Red Knot Acquisitions, LLC*, 147 Conn. App. 39, 42, 80 A.3d 594 (2013). Subject matter jurisdiction is a question of law and, therefore, our review is plenary. See *Isaacs* v. *Ottaviano*, 65 Conn. App. 418, 421, 783 A.2d 485 (2001).

"[S]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Nevertheless, [s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he [or she] has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Internal quotation marks omitted.) *Geremia* v. *Geremia*, 159 Conn. App. 751, 779–80, 125 A.3d 549 (2015).

"Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguable protected interests. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled two-fold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214–15, 982 A.2d 1053 (2009).

"[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect. . . . [I]f the injuries claimed by the plaintiff are

remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." (Citation omitted; internal quotation marks omitted.) *Wiederman* v. *Halpert*, 178 Conn. App. 783, 795, 176 A.3d 1242 (2017), cert. granted on other grounds, 328 Conn. 906, 177 A.3d 1161 (2018).

Want of aggrievement is a defect that deprives the Superior Court of jurisdiction to hear a probate appeal. *Baskin's Appeal from Probate*, 194 Conn. 635, 637, 484 A.2d 934 (1984). The question is whether the appellant possibly has a legally protected interest in the estate that has been adversely affected by the Probate Court. See *Erisoty's Appeal from Probate*, 216 Conn. 514, 519, 582 A.2d 760 (1990).

On the basis of our review of the allegations of the complaint in the present case, we conclude that Burton has failed to allege a colorable claim of direct personal injury. The plaintiffs appealed from the Probate Court's August 23, 2016 finding that the attorney's fees charged to the Jackson plaintiffs' subtrusts for the trust company's defense of the 2015 appeal were reasonable. Burton's trust was in no way affected. Her alleged injury, if any—and we do not conclude that there was any—therefore, is indirect and amorphous as it derives from the decree of the Probate Court that pertained to the Jackson plaintiffs' subtrusts. The Superior Court, therefore, lacked subject matter jurisdiction over Burton's appeal as she was not aggrieved by the Probate Court decree and, therefore, lacked standing to appeal.[19]

## II

The Jackson plaintiffs claim that the Superior Court improperly dismissed their appeal from the Probate Court decree mailed on August 26, 2016, on the basis of timeliness. We disagree.

The Jackson plaintiffs' appeal is controlled by § 45a-186 (a), which provides, in relevant part: "Except as provided in sections 45a-187 and 45a-188, any person aggrieved by an order, denial or decree of a Probate Court in any matter . . . may . . . not later than thirty days after mailing of an order, denial or decree for any matter in a Probate Court appeal therefrom to the Superior Court. Such an appeal shall be commenced by filing a complaint in the superior court in the judicial district in which such Probate Court is located . . . ."[20]

"The right to appeal from the decision of a Probate Court is purely statutory: General Statutes § 45-288 [now § 45a-186]; and the requirements fixed by statute for taking and prosecuting the appeal must be met. The Superior Court is without jurisdiction to entertain an

appeal from probate unless the appeal complies with the conditions designated by statute as essential to the exercise of this power." *Bergin* v. *Bergin*, 3 Conn. App. 566, 568, 490 A.2d 543, cert. denied, 196 Conn. 806, 494 A.2d 903 (1985), overruled in part on other grounds, 289 Conn 795, 961 A.3d 365 (2008). Probate appeals are properly commenced by filing a complaint in the Superior Court. Id.

As our Supreme Court has stated: "It is axiomatic that strict compliance with [the] terms [of § 45a-186] is a prerequisite to an aggrieved party's right to appeal and to the Superior Court's jurisdiction over the appeal." *Connery* v. *Gieske*, 323 Conn. 377, 389, 147 A.3d 94 (2016). "[J]urisdiction over a probate appeal attaches when the appeal is properly taken." *Heussner* v. *Hayes*, 289 Conn. 795, 802, 961 A.2d 365 (2008).

"[W]e are . . . mindful of the familiar principle that a court [that] exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . Our courts of probate have a limited jurisdiction and can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power." (Internal quotation marks omitted.) *Burnell* v. *Chorches*, 173 Conn. App. 788, 793, 164 A.3d 806 (2017). "It is also well established that [t]he right to appeal from a decree of the Probate Court is purely statutory and the rights fixed by statute for taking and prosecuting the appeal must be met. . . . Thus, only [w]hen the right to appeal . . . exists and the right has been duly exercised in the manner prescribed by law [does] the Superior Court [have] full jurisdiction over [it]." (Internal quotation marks omitted.) Id.

The timeline in the present case is not in dispute. The Probate Court's decree was mailed on August 26, 2016. The time in which the Jackson plaintiffs properly may have filed an appeal expired on September 26, 2016. The plaintiffs' appeal was filed in the Superior Court on October 11, 2016. The trust company and Drury filed a motion to dismiss on November 10, 2016. Judge Bates dismissed the appeal in a memorandum of decision on May 10, 2017, stating, in relevant part, that the appeal was brought "well after the thirty day deadline." The court also stated that the plaintiffs made "many arguments regarding the fairness of the decision and distribution of assets, but they never establish a basis for ignoring the applicable appeals period."

Burton filed a motion to reargue and to reconsider the court's judgment of dismissal in which she claimed that the court's memorandum of decision contained factual errors, specifically, that the appeal challenged "the distribution of trust funds by the Probate Court."

Burton stated that the "appeal concerns the misappropriation of funds belonging to the [Jackson plaintiffs] by a fiduciary, [the trust company] and its agents." Judge Bates denied the motion to reargue stating that the "plaintiffs seem to be arguing that this proceeding was not a probate appeal, but rather, a claim of misappropriation of funds by the [trust company], and, therefore, it was inappropriate to dismiss the case. However, the complaint states it is an 'Appeal From Probate' and Exhibit A-1 of the complaint is the decision of the New London Probate Court dated August 23, 2016. The parties may have wished to address their allegations against the [trust company] in the context of the appeal, but that does not mean that they are somehow immune from the appeal deadline and its jurisdictional ramifications."

Following the filing of the present appeal to this court, the plaintiffs filed two motions for rectification/articulation in this court dated June 27, and July 18, 2007.[21] This court referred both motions to Judge Bates, who denied the motion for rectification/articulation as to the denial of the plaintiff's motions for reargument. In the trial court's response, dated October 20, 2017, the court stated that the plaintiffs were seeking to open the judgment of dismissal for consideration of allegations of fraud, deception, and bad faith on the part of the trust company. The court again stated that its May 11, 2017 dismissal of the appeal was not made on the merits of the appeal, but solely on its untimeliness. The plaintiffs failed to bring the appeal within thirty days of the Probate Court decree, and therefore, the Superior Court lacked jurisdiction to hear the appeal or to open the judgment of dismissal. The court also stated that "it appears that the plaintiffs are seeking to change the approval of a probate accounting into a civil case against [the trust company] for misappropriation and fraud. However, the plaintiffs' pleadings and accusations cannot change a late filed probate appeal into a civil action."

On appeal in this court, the Jackson plaintiffs argue that Judge Bates failed to consider whether the late filing of their appeal was tolled by the doctrine of equitable estoppel because Drury and the trust company allegedly committed a fraud on them. Once they became aware of the "trickery, bad faith, fraud, and unauthorized conduct of [the trust company and Drury] the plaintiffs made haste to file the appeal to try to set things right." This argument fails as a matter of law and of fact.

The doctrine of equitable tolling does not apply to subject matter jurisdiction. "Our Supreme Court has made clear that a court lacks the authority to apply the doctrine of equitable tolling or otherwise exercise discretionary authority to extend a limitations period if the applicable statute of limitations constitutes a limit

on the court's subject matter jurisdiction." *Turner* v. *State*, 172 Conn. App. 352, 360, 160 A.3d 398 (2017). Once the jurisdictional deadline has passed, the court is without subject matter jurisdiction, which cannot be waived. See *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266, 777 A.2d 645, aff'd after remand, 67 Conn. App. 316, 786 A.2d 1283 (2001). When a court lacks subject matter jurisdiction, it has no authority to adjudicate the action before it. See *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 265, 193 A.2d 530 (2018).

Even if the jurisdictional time limit for filing a probate appeal could be equitably tolled, the Jackson plaintiffs' argument fails because the conduct of which they complain occurred after the jurisdictional deadline had passed. The factual basis of their argument is that Drury told them in response to an e-mail Burton sent her on October 5, 2016, that if Burton took an appeal from the August 23, 2016 Probate Court decree, attorney's fees would be charged to them pursuant to the Receipt, Release and Authorization they signed on August 29, 2016. See footnote 13 of this opinion. The alleged factual basis of the equitable estoppel claim, therefore, occurred after the thirty day time period in which to appeal from the Probate Court decree expired. Moreover, the alleged factual basis was not material to the issue decided by the Probate Court on August 23, 2016, which was the reasonableness of the attorney's fees incurred by the trust company.

In his memorandum denying the plaintiffs' motion for rectification/articulation, Judge Bates stated: "[i]t appears that the plaintiffs are seeking to change the approval of a probate accounting into a civil case against [the trust company] for misappropriation and fraud. However, the plaintiffs' pleadings and accusations cannot change a late filed probate appeal into a civil action." We agree with the Superior Court's assessment of the plaintiffs' claim. Moreover, when sitting as a Probate Court, the Superior Court does not sit as a court of general jurisdiction.

The case of *Marshall* v. *Marshall*, 71 Conn. App. 565, 803 A.2d 919, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002), a probate appeal, is instructive. The plaintiff in *Marshall* claimed, among other things, that the Superior Court deprived her of due process by failing to hold an evidentiary hearing to determine whether her attorney had engaged in misconduct by withdrawing her probate appeal from the jury docket. Id., 569. In resolving the appeal, this court first addressed a jurisdictional issue that was implicit in the claim and determined that the claim failed because the court did not have jurisdiction to hold such an evidentiary hearing.

"[W]ith regard to appeals from probate, our case law states that [a]n appeal from a probate order or decree to the Superior Court is not a civil cause of action. It

has no more of the ordinary attributes of a civil action than the original proceedings in the court of probate. . . . [A]ppeals from probate are not civil actions because it has always been held that the Superior Court, while hearing appeals from probate, sits as a court of probate and not as a constitutional court of general or common-law jurisdiction. It tries the questions presented to it de novo, but in so doing it is . . . exercising a special and limited jurisdiction conferred on it by the statute authorizing appeals from probate. . . .

"In a probate appeal, the Superior Court cannot consider events that occurred after the issuance of the order or decree appealed form. . . . The appeal brings to the Superior Court only the order appealed from. The order remains intact until modified by a judgment of the Superior Court after a hearing de novo on the issues presented for review by the reasons of appeal. . . . The Superior Court may not consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. . . . Inasmuch as the motion for the appeal is made in the Court of Probate and forms a part of the proceedings in that court, no amendment to it may be made in the Superior Court. The Superior Court, therefore, cannot enlarge the scope of the appeal." (Internal quotation marks omitted.) Id., 569–70.

In the present case, the plaintiffs failed to file an appeal from the Probate Court's August 23, 2016 decree within thirty days of when it was mailed on August 26, 2016. The plaintiffs sought to have the court reconsider its decision by alleging that the trust company and Drury were guilty of fraud and deception with respect to the Receipt, Release, and Indemnity Agreement. The thirty day appeal period, however, had expired at the time of the defendants' alleged deceptive acts. Moreover, such allegations were not within the jurisdictional purview of the Superior Court sitting as a court of probate. We, therefore, affirm the Superior Court's judgment of dismissal.[22]

The judgment is affirmed.

In this opinion, the other judges concurred.

[1] The law firm of Gould Larson Bennet & O'Donnell (law firm) and Amanda Kaplan, an attorney with the law firm, also were cited as defendants in the plaintiffs' appeal to the Superior Court. Drury, Kaplan, and the law firm, however, were not parties to the August 23, 2016 Probate Court proceeding. The trust company is the only defendant that is a party to the present appeal.

[2] The plaintiffs claim that the trial court improperly determined that General Statutes § 45a-186 (a) is jurisdictional; failed to consider whether the facts and circumstances of the present matter qualify for the application of the doctrine of equitable estoppel and waiver of the thirty day appeal period; failed to consider whether General Statutes § 52-595, the fraudulent concealment statute, tolled the appeal period; committed reversible error in not addressing the central issue presented in the appeal; and failed to disclose its potential conflicts of interest and bias. The plaintiffs also claim that the Probate Court's notice was defective and deprived them of due process. In the alternative, the plaintiffs claim that the appeal is premature.

[3] The plaintiffs submitted a joint brief and a joint reply brief. Burton, a disbarred attorney, appeared and presented an oral argument on her own

behave. The Jackson plaintiffs did not present an oral argument.

[4] An appellate court may take judicial notice of files in the same or other cases. See *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 739 n.10, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011).

[5] The trust directed that in the event one of the settlor's children dies prior to a distribution of trust property, the deceased child's share of trust property shall be deemed to have lapsed and shall be divided among the deceased child's children. When John Burton died, subtrusts were established for that purpose.

[6] The Probate Court's June 30, 2015 order and decree stated in relevant part: "An amended final account was submitted to this court by Attorney Patrick Poeschl. The time period covered in this accounting is March 30, 2015 through June 8, 2015. It is uneconomical and costly to have the distribution flow from the estate, to the June Burton Trust to the Milton Burton Trust and then to the beneficiaries, when the estate can distribute directly to the beneficiaries. *At issue is the construction of the trust and distribution to those taking under John Burton.* Attorney Poeschl shall file a petition to construct the terms of the Trust for proper distribution.

"And it is ordered and decreed that: accounting approval and distribution approved except for distribution to those taking under John Burton. Distribution shall be determined upon a decision by the Court on the trust construction. Attorney Poeschl has met all the requirements set forth in [General Statutes §] 45a-482 and 45a-484, to terminate the trusts re-established for Margaret Burton Jackson and Miarden Jackson, and allow for distribution to bypass trusts and distribute directly to the beneficiaries." (Emphasis added.)

[7] Orsolya Burton is John Burton's second wife; Julia Burton is their daughter. Kaplan and the law firm represented the trust company in the 2015 appeal.

[8] Judge Vacchelli's memorandum of decision stated in relevant part that Poeschl recovered $62,883.99 of the settlor's unclaimed funds from the state treasurer. In his amended final account, Proeschl proposed to distribute all of the funds to the beneficiaries in accordance with a schedule, except $963.99, which was reserved for fiduciary income tax purposes and $6880 for a later Probate Court determination as to how to distribute the sum among certain persons potentially taking shares due to the death of John Burton. Poeschl proposed giving $10,320 to Burton, which was one-sixth of the total unclaimed funds recovered less the reserve for tax purposes.

Judge Vacchelli found no merit to Burton's contention that termination of the trust as proposed by Poeschl will diminish the monetary value of the trust property unnecessarily and that the decree will diminish the value of the trust property to which she is lawfully entitled. The court could not discern how Burton sustained an economic loss or any other adverse effect to her interests. There are no trustee charges involved in the Probate Court decree and there are no claims that the estate fees are otherwise excessive. The court, therefore, found that Burton was not aggrieved to bring the appeal and dismissed it.

Burton filed an appeal to this court from the judgment of dismissal rendered by Judge Vacchelli. She, however, withdrew the appeal on July 29, 2016.

[9] In response to the Jackson plaintiffs' letter, Kaplan wrote to the Probate Court on behalf of the trust company stating in part, that in the 2015 probate appeal, Burton "specifically appealed the termination of the Jacksons' Trusts, at which point [the trust company] was unable to complete the terminations of the Trusts and distribute the funds held therein. As is appropriate under well established law, the [trust company as trustee] hired [the law firm], to defend the termination of the Trusts, as required under [General Statutes] § 51-88. As is equally appropriate, the [trust company] paid the legal fees related to the representation directly from the Trusts. [General Statutes] § 45a-234 (19) and Article X of the June K. Burton Revocable Trust . . . . As is well-settled law: The trustee must do what is necessary within the bounds of law and reason to defend the trust and thus may retain counsel for that purpose and is entitled to have the costs of such representation absorbed by the trust." Kaplan cited legal authority for the trust's position.

[10] The court stated in full: "After due hearing, the court finds that . . . Margaret Jackson and Miarden Jackson filed a request for a hearing regarding [the trust company's] fiduciary duties and purported misappropriation of funds from the [settlor's] estate. *The issue presented to the court by the petitioner is solely stated to be the attorney['s] fees incurred and allocated to the subtrusts.* The court finds that the [trust company] acted in good faith pursuant to [its] fiduciary duty in obtaining counsel for the appeal

from the Probate Court decision dated June 30, 2015. The review of attorney's fees incurred for the time spent and hourly rate are reasonable. The [trust company] has agreed to not pass on the charge to the beneficiaries the balance of $960.00 of attorney's fees along with additional fees incurred in this matter.

"And it is ordered and decreed that: Based on the foregoing, the court takes no action at this time." (Emphasis added.)

[11] Although the Probate Court did not use the word decree, the parties have treated the Probate Court document signed on August 23, 2016, and mailed on August 26, 2016, as a decree. A decree "is a judicial decision in a court of equity, admiralty, divorce or probate . . . ." Black's Law Dictionary (10th Ed. 2014). We conclude that the subject document is a decree. In their brief on appeal, the plaintiffs repeatedly refer to the document as a decree. Section 45a-186 (a) provides in relevant part that "any person aggrieved by any order, denial or decree of a Probate Court . . . may . . . appeal therefrom to the Superior Court."

[12] The Receipt, Release and Indemnity Agreement that each of the Jackson plaintiffs signed on August 29, 2016, states in relevant part: "I agree, for myself and my heirs, successors and assigns to release, indemnify and hold harmless [the trust company], and its successors, from any and all claims, demands, suits, judgments, costs, expenses, attorney's fees and all losses and damages of every kind and character whatsoever arising out of the administration of the Trust."

[13] The full text of Burton's e-mail to Drury states: "I am notifying you in advance of my intended filing this week of a probate appeal as well as a separate action seeking monetary damages for [the trust company's] bad faith and mismanagement of the . . . Trust.

"I intend to name you personally in addition to [the trust company] as well as the law firm which has been representing [the trust company].

"I will agree to forego these actions if [the trust company] agrees to return in full to Margaret Jackson and Miarden Jackson the money it misappropriated from the . . . Trust.

"I will need your response by close of business on October 5, 2016."

[14] In her objection to the motion to dismiss, Burton stated that the appeal was taken beyond the thirty day appeal period, six days after Drury made the Jackson plaintiffs aware that the releases she directed them "to sign under duress for release of their inheritance as administered by [the trust company] to assess attorney's fees against [them] should a probate appeal be taken by any person challenging the August 26, 2016 Probate Court order and decree, inter alia, regardless of whether [they] participated in such probate appeal or were even aware of it. Neither [the trust company] nor . . . Drury notified Burton . . . that her sister . . . and nephew . . . would be held liable by [the trust company] should [Burton] take an appeal of the Probate Court order and decree."

[15] In denying the motion to reargue, Judge Bates stated that Burton seemed to be arguing that the proceeding was not a probate appeal, but a claim of misappropriation of funds by the trust company and, therefore, it was inappropriate to dismiss the case. The complaint, however, states that it is an appeal from probate and the Probate Court's August 23, 2016 decree is appended as an exhibit. Although Burton may have wanted to address allegations against the trust company in the context of the appeal, that does not mean that she "was immune from the appeal deadline and its jurisdictional ramifications."

[16] The first motion for articulation filed in the trial court sought articulation as to the court's denial of Burton's motions for reargument and the second motion for articulation filed in the trial court sought articulation as to the "Plaintiff's Request for Disclosure," filed on May 30, 2017, and Burton's "Correction to Plaintiff's Request for Disclosure," filed on June 5, 2017.

[17] "[A] question of subject matter jurisdiction may be raised at any time, including sua sponte invocation by a reviewing court." (Internal quotation marks omitted.) *Geremia* v. *Geremia*, 159 Conn. App. 751, 779 n.17, 125 A.3d 549 (2015).

[18] Burton argued that the "[trust company]/Drury's trickery came in three parts: first by withholding this information during the probate proceedings and from [the Probate Court] as they persuaded him to direct the Jacksons to sign 'whatever release [the trust company] prepared' to avoid forfeiture of their remaining inheritance; second by withholding notice of this to the Jacksons until after the appeal period had expired and third by failing to provide direct notice at any time to [her] or obtain her consent."

[19] The trust company did not raise the issue of Burton's standing in the

appeal to the Superior Court. Although the Superior Court did not dismiss Burton's appeal due to her lack of standing, we may affirm the court's decision on alternative grounds. "[W]e . . . may affirm the court's judgment on a dispositive [alternative] ground for which there is support in the trial court record." (Internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Tanasi*, 176 Conn. App. 829, 839 n.5, 171 A.3d 516, cert. denied, 327 Conn. 978, 174 A.3d 801 (2017). See part II of this opinion.

[20] On appeal, the plaintiffs argue that the time limitation in "§ 45a-186 (a) is directory, not mandatory and, therefore, is not subject matter jurisdictional." They argue that in imposing a time limitation, the legislature can manifest an intent to make the time constraint mandatory and not waivable. Whether the statute employs the word *may* or *shall* is determinant of the legislature's intent. The plaintiffs claim that because the statute employs the word *may*, and not the word *shall*, the time limitation is not jurisdictional.

We disagree with the plaintiffs' construction of the statute. The use of the word *may* in the statute grants a person aggrieved by an action of the Probate Court the right to appeal, i.e., may appeal. The time in which an appeal is to be filed is set off by commas, from the language granting the right to appeal. The plaintiffs' argument is unpersuasive.

[21] Burton's second motion for rectification and articulation concerned her request for disclosure filed on May 30, 2017, in which she questioned Judge Bates' impartiality, including his association with a former vice president and trust officer of the trust company and whether he received any revenue for litigation concerning the Millstone nuclear power station when he was a partner at the law firm of Robinson & Cole, LLC. She also asked the court to articulate why the court's order in response to her motion for extension of time was dated June 19, 2017, but not mailed to her until June 29, 2017.

On October 20, 2017, the court responded to Burton's second motion for rectification and articulation, stating in part that it had no control over the mailing of orders from the court, that it was not aware of any facts that potentially give rise to its disqualification on the basis of bias, prejudice or conflict of interest, and that it "was not aware of any actions or relationships that would lead an impartial person to question [the court's] impartiality regarding the plaintiffs."

[22] The plaintiffs also claim that the time limitation in § 45a-186 (a) can be waived. We disagree. Subject matter jurisdiction may not be waived. See *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 266.

———————————————